UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GOODEARTH MARITIME LTD.,                    :

             Plaintiff,                    :          08 CV 2028 (RMB)
                                             ECF CASE

      - against -                    :

CALDER SEACARRIER CORP.,                    :
a.k.a. CALDER SEA CARRIER CORP.,
ROLSTON ENTERPRISES LTD., and               :
FENBY COMPANY LIMITED a.k.a. FENBY
CO. LTD.,                                   :

             Defendants.                    :
-------------------------------------------------------------X

## DECLARATION OF LAUREN C. DAVIES
## IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
## MOTION TO VACATE MARITIME ATTACHMENT

       LAUREN C. DAVIES declares under penalty of perjury of the laws of the United States

of America as follows:

       1.     I am an attorney with the firm, Tisdale Law Offices, LLC, counsel for the

Plaintiff herein, Goodearth Maritime Ltd. ("Goodearth" or "Plaintiff") and I make this

declaration based upon my own personal knowledge and upon information and documents

furnished to me by Plaintiff that I believe to be true and accurate.

       2.     I submit this Declaration in Support of Plaintiff's Opposition to Defendant Fenby

Company Limited's ("Fenby") Motion to Vacate this maritime attachment.

       3.     By a charter party dated January 4, 2008, which terms are confidential between

the parties, Plaintiff chartered the motor vessel "GOOD TRADE" (hereinafter the "Vessel") to

the Defendant Calder for the carriage of a cargo from "1/3 safe port safe China" to "1/3 safe port

safe med."

4.    Pursuant to clause 21 of the charter party described herein, the Defendant Calder was obligated to pay freight for the carriage of goods from the loadport(s) in China to the discharging port(s) in the Mediterranean.

5.    Pursuant to clause 13 of the charter party, the total freight due under the charter party was a lumpsum of $3,500,000.   Pursuant to clause 21 of the charter party, 97% of the freight minus applicable commission was to be paid within three banking days after completion of loading at each port.

6.    The Vessel properly loaded its cargo in China and the Vessel arrived at the discharge port without incident.

7.    Three banking days later, Calder failed to pay freight as required by the charter party terms.

8.    The Plaintiff continued to demand payment of the outstanding freight due and owing under the charter party.

9.    As a result of the defendant Calder's failure to timely remit the outstanding freight, the freight prepaid Bills of Lading were not released and the Vessel was detained at the discharge port.

10.    Furthermore, the Plaintiff incurred the cost of underwater diving expenses at Singapore for the Vessel's touching bottom at Shanghai due to unsafe berth provided by Calder.

11.    These underwater diving expenses are for Calder's account under the terms of the charter party and despite due demand, the defendant Calder has failed to reimburse the Plaintiff for these costs.

12.    In breach of the charter party, defendant Calder failed to pay freight in a timely manner and failed to issue Bills of Lading in conformity with the charter party.  As a result,

2

Plaintiff incurred detention and interest on the unpaid freight at the commercial rate of 15.25% of the outstanding late freight while waiting off Misurata for freight to be paid and the Bills of Lading to be released as required by the charter party. The Plaintiff also incurred costs for underwater diving expenses.

13.    Upon information and belief, Calder ultimately paid the outstanding freight but has failed to pay the detention charges and other expenses that arose out of Calder's failure to pay freight and properly issue the Bills of Lading in breach of the charter party terms.

14.    Specifically, Plaintiff has suffered losses in the total principal sum of $306,227.91, as best can now be estimated, exclusive of interest, recoverable costs and reasonable attorneys fees.

15.    Pursuant to the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

16.    In accordance with the charter party, the Plaintiff has commenced arbitration in London and appointed its arbitrator.

17.    In order to obtain personal jurisdiction over the Defendants and to obtain security for its maritime claims, Plaintiff commenced this action on February 6, 2007, by the filing of a Verified Complaint which included a prayer for an Ex-Parte Order for Process of Maritime Attachment pursuant to Rule B [of the Supplemental Rules for Certain Admiralty and Maritime Claims].

18.    On the same day, the Court issued an Ex-Parte Order of Maritime Attachment and Garnishment. The Ex-Parte Order authorized Plaintiff to attach Defendants' property located within this judicial district and belonging the Defendants up to the total sum sought.

19.     The Ex-Parte Order and Process of Maritime Attachment and Garnishment ("PMAG") named garnishee banks believed to have assets due and owing to the Defendants. The Ex-Parte Order and PMAG were served upon the garnishee banks.

20.     On or about March 14, 2008, the Plaintiff filed a Verified Amended Complaint with the court to add several additional defendants and amend their claim.

21.     On the same day, the Court issued an Amended Ex-Parte Order of Maritime Attachment and Garnishment based upon the Verified Fourth Amended Complaint. The Ex-Parte Order authorized Plaintiff to attach Defendants' property located within this judicial district and belonging the Defendants up to the sum of $482,775.72.

22.     On or about June 20, 2008 and pursuant to the PMAGs issued in this matter, Bank of New York restrained Fenby's property in the sum of $482,775.72.

23.     In its Verified Amended Complaint, the Plaintiff provides evidentiary support of its allegations that Fenby is an alter ego of Calder. *See Verified Amended Complaint annexed hereto as Exhibit "1."* These allegations include the following:

24.     Upon information and belief, Defendant Fenby is the alter ego of Defendant Calder because Calder dominates and disregards Fenby's corporate form to the extent that Calder is actually carrying on the business and operations of Fenby as if the same were its own.

25.     Upon information and belief, Defendants Fenby and Calder share a common address of: Voula, Vas. Pavlou, Athens, Greece and common phone (+30210-9659910) and fax numbers (+30210-9659466).

26.     Upon information and belief, Defendant Fenby is a shell-corporation through which Defendant Calder conducts its business.

27.    Upon information and belief, Defendant Fenby has no separate, independent identity from Defendant Calder.

28.    Upon information and belief, Fenby has been described in the shipping industry as a "paper company." Further, the Plaintiff commissioned company searches through Lloyd's MIU and Factiva which yielded no results except that Fenby is registered in the Marshall Islands.

29.    In the further alternative, Defendants Fenby and Calder are partners or joint venturers.

30.    In addition to the above alter-ego allegations, further evidence, as outlined below, has been discovered since the filing of Fenby's motion to vacate this maritime attachment.

31.    The wire transfer attached pursuant to the PMAG's issued in this matter on June 20, 2008 was caught at "The Bank of New York Mellon today for funds in the amount of $1,398,750.00, being wire transferred from "Fenby Company Limited, Voula V. Pavlou, 108 TK 16673" to "Baja Ferries USA LLC" referencing "M/V RENATA – Payment of Freights." *See description of wire transfer via email from Kevin McGee, outside counsel for Bank of New York annexed hereto as Exhibit "2."*

32.    On or about July 2, 2008, Baja Ferries USA LLC filed a Verified Complaint with a prayer for maritime attachment under docket number 08 CV 6031 (DC) against Calder Sea Carrier Corp. and Fenby Company Limited, et. al.

33.    This complaint states that Baja Ferries USA LLC chartered the M/V RENATA to Calder as charterer to carry a cargo from Romania to Kenya. *See Baja Ferries USA LLC v. Calder Seacarrier Corp., et. al., 08 Civ. 6031 (DC), at ¶ 9 annexed hereto as Exhibit "3."*

34.    The Baja Ferries Verified Complaint further states that $1,398,750.00 in freight was to be prepaid by Calder within "three days of completion loading." *See Id.* at ¶ 10.

35.    The Baja Ferries Verified Complaint goes on to state that "on or about June 20, 2008, a payment was remitted by defendant Fenby on behalf of Calder to Plaintiff in the amount of $1,398,750. However, a third party creditor of Calder attached $482,775.72 of this freight payment, pursuant to [an] Admiralty Rule B action and maritime attachment before this court (08 Civ. 2028 (RMB)), alleging Fenby to be Calder's alter ego." *See Id.* at ¶ 14.

36.    As such, the wire transfer attached pursuant to the PMAG in this action was a freight payment being paid by Fenby on behalf of Calder despite the fact that, based on the Verified Complaint attached hereto as Exhibit "3," the M/V RENATA was chartered to Calder and not Fenby.

37.    It is not common practice in the maritime industry for an independent company to pay another company's debt, where it has not formal relationship to the underlying charterparties.

38.    In the Declaration of Panos Michalitses which accompanies Fenby's motion to vacate, Mr. Michalitses states that "Fenby is an independent company and its monies should not be attached in this matter." *See Declaration of Panos Michalitses ("Michalitses Decl.")* at ¶ 3 *annexed hereto as Exhibit "4."*

39.    In his Declaration, Mr. Michalitses declares under penalty of perjury that Fenby has address in Piraeus which is "completely different" from that of Calder. *See Exhibit "4."*

40.    However, the wire attached at Bank of New York naming Fenby as the originator of the transfer pursuant to the PMAG's issued in this matter states that Fenby's address is: "Voula V. Pavlou, 108 TK 16673." *See Exhibit "2."*

41.    This is the address of Calder as described by "Captain Panagiotis Mihalitsis," self described "manager of the chartering department of Calder Seacarrier Corp., address 108 Vas.

Paulou Ave. Voula, Athens-Greece" in a case filed in the United States District Court for the Southern District of New York under docket number 07 CV 6520 (LAK) by Calder Seacarrier Corp. *See Declaration of Panagiotis Mihalitsis ("Mihalitsis Decl.") annexed hereto as Exhibit "5."*

42.     The "Voula Vas Paulou" address described herein and in the Verified Amended Complaint is the same address from which wire transfers were sent by Rolston Enterprises Limited on behalf of Calder as alleged in the Verified Amended Complaint. *See Verified Amended Complaint ¶¶ 21 - 30; see also wire transfer sent by Rolston at "Voula Vas. Pavlou 108 TK 16673" attached to the Verified Amended Complaint as Exhibit 2.*

43.     Thus, it is respectfully submitted that Mr. Michalitsis, who declares under penalty of perjury in the instant action to be the "manager of Fenby Company Limited" is also the "manager of the chartering department of Calder Seacarrier Corp. *Compare Michalitses Decl., Ex. "4" with Mihalitsis Decl. Ex. "5."*

44.     In *DS Bulk Pte. Ltd. v. Calder Seacarrier Corporation*, 05 CV 10146 (SHS), Captain Mihalitsis has submitted yet another declaration in which he claims to be the "manager responsible for the Operation Department of Universal Cargo Lines ("UCL")." *See Michalitsis Declaration annexed hereto as Exhibit "6."*

45.     In *DS Bulk Pte. Ltd. v. Calder Seacarrier Corporation*, Judge Stein granted Universal Cargo Lines' motion to vacate the maritime attachment finding that UCL was not a named defendant and, as such, the plaintiff had not met the technical requirements of Rule B. *See Memorandum Order annexed hereto as Exhibit "7."*

46.     In *DS Bulk Pte. Ltd. v. Calder Seacarrier Corporation*, Mr. Garth Wolfson appeared on behalf of UCL to move to vacate the attachment that was filed against Calder. *See DS Bulk Pte. Ltd. v. Calder Seacarrier Corp. Docket Sheet, annexed hereto as Exhibit "8."*

47.     Furthermore, Mr. Wolfson is also New York counsel for both Calder and Fenby. Mr. Wolfson represents Fenby in the instant action and represents Calder in the action filed under docket number 07 CV 6520(LAK). *See Verified Complaint in Calder Seacarrier Corp. v. Viking Marine S.A., et al., 07 CV 6520 (LAK), annexed hereto as Exhibit "9."*

48.     Fenby has failed to submit any evidence showing that these companies are in fact separate and distinct entities.

49.     With the benefit of discovery, Plaintiff has no doubt that numerous other connections between Fenby, Calder and the other defendants will be revealed.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 8, 2008.

Lauren C. Davies

## **AFFIRMATION OF SERVICE**

I hereby certify that on July 8, 2008, a copy of the foregoing DECLARATION OF

LAUREN C. DAVIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION TO

VACATE MARITIME ATTACHMENT was filed electronically and served by mail on anyone

unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by

operation of the Court's electronic filing system or by mail to anyone unable to accept electronic

filing.  Parties may access this filing through the Court's CM/ECF system.


By:_____/s/_____
Lauren C. Davies

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

GOODEARTH MARITIME LTD.,                           :

              Plaintiff,                       :                08 CV 2028 (RMB)
                                                                              ECF CASE
      - against -                                  :

CALDER SEACARRIER CORP.,                          :
a.k.a. CALDER SEA CARRIER CORP.,
ROLSTON ENTERPRISES LTD., and              :
FENBY COMPANY LIMITED a.k.a. FENBY
CO. LTD.,                                                         :

          Defendants.                            :
-----------------------------------------------------------------X

MAR 1 4 2008
U.S.D.C. S.D. N.Y.
CASHIERS

## VERIFIED AMENDED COMPLAINT

     The Plaintiff, GOODEARTH MARITIME LTD. (hereinafter "Plaintiff"), by its

attorneys, Tisdale Law Offices, LLC, as and for its Verified Amended Complaint against the

Defendants, CALDER SEACARRIER CORP. a.k.a. CALDER SEA CARRIER CORP.

(hereinafter "Calder"), ROLSTON ENTERPRISES LTD. (hereinafter "Rolston") and FENBY

COMPANY LIMITED a.k.a. FENBY CO. LTD. (hereinafter "Fenby")(collectively referred to

as "Defendants") alleges, upon information and belief, as follows:

     1.     This is an admiralty and maritime claim within the meaning of Federal Rule of

Civil Procedure 9(h) and 28 United States Code § 1333.

     2.     At all material times, Plaintiff was and still is an entity duly organized and

existing by virtue of foreign law with a principal place of business in Chennai, India.

     3.     Upon information and belief, at all material times, Defendant Calder was and still

is an entity duly organized and existing by virtue of foreign law with a principal place of

business in Athens, Greece.

-1-

4.      Upon information and belief, at all material times, Defendant Rolston was and still is an entity duly organized and existing by virtue of foreign law with a principal place of business in Athens, Greece.

5.      Upon information and belief, at all material times, Defendant Fenby was and still is an entity duly organized and existing by virtue of foreign law with a principal place of business in Athens, Greece.

6.      By a charter party dated January 4, 2008, which terms are confidential between the parties, Plaintiff chartered the motor vessel "GOOD TRADE" (hereinafter the "Vessel") to the Defendant Calder for the carriage of a cargo from "1/3 safe port safe China" to "1/3 safe port safe med."

7.      Pursuant to clause 21 of the charter party described herein, the Defendant Calder was obligated to pay freight for the carriage of goods from the loadport(s) in China to the discharging port(s) in the Mediterranean.

8.      Pursuant to clause 13 of the charter party, the total freight due under the charter party was a lumpsum of $3,500,000.  Pursuant to clause 21 of the charter party, 97% of the freight minus applicable commission was to be paid within three banking days after completion of loading at each port.

9.      The Vessel properly loaded its cargo in China and the Vessel arrived at the discharge port without incident.

10.     Three banking days later, Calder failed to pay freight as required by the charter party terms.

11.     The Plaintiff continued to demand payment of the outstanding freight due and owing under the charter party.

–2–

12.    As a result of the defendant Calder's failure to timely remit the outstanding freight, the freight prepaid Bills of Lading were not released and the Vessel was detained at the discharge port.

13.    Furthermore, the Plaintiff incurred the cost of underwater diving expenses at Singapore for the Vessel's touching bottom at Shanghai due to unsafe berth provided by Calder.

14.    These underwater diving expenses are for Calder's account under the terms of the charter party and despite due demand, the defendant Calder has failed to reimburse the Plaintiff for these costs.

15.    In breach of the charter party, defendant Calder failed to pay freight in a timely manner and failed to issue Bills of Lading in conformity with the charter party. As a result, Plaintiff incurred detention and interest on the unpaid freight at the commercial rate of 15.25% of the outstanding late freight while waiting off Misurata for freight to be paid and the Bills of Lading to be released as required by the charter party. The Plaintiff also incurred costs for underwater diving expenses *See Invoices from Goodearth to Calder dated March 5, 2008 annexed hereto as Exhibit "1."*

16.    Upon information and belief, Calder ultimately paid the outstanding freight but has failed to pay the detention charges and other expenses that arose out of Calder's failure to pay freight and properly issue the Bills of Lading in breach of the charter party terms.

17.    Specifically, Plaintiff has suffered losses in the total principal sum of $306,227.91, as best can now be estimated, exclusive of interest, recoverable costs and reasonable attorneys fees.

18.    Pursuant to the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

–3–

19.    In accordance with the charter party, the Plaintiff has commenced arbitration in London and appointed its arbitrator.

20.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party in London arbitration pursuant to English Law. As best as can now be estimated, Plaintiff expects to recover the following amounts:

| | | | | |
|---|---|---|---|---|
| A. | Principal claim: | | | $306,227.91 |
| | | Detention | $270,000.0 | |
| | | Underwater diving expenses incurred at Singapore for vessel's touching bottom at Shanghai due to unsafe berth provided by Calder | $6,000.00 | |
| | | Interest on unpaid freight | $30,227.91 | |
| B. | Estimated interest on the principal claim at 7.5% compounded quarterly for three years | | | $76,547.81 |
| C. | Estimated attorneys fees: | | | $50,000.00 |
| D. | Estimated Arbitration costs: | | | $50,000.00 |
| Total: | | | | **$482,775.72** |

21.    Upon information and belief, Defendant Rolston is the alter ego of Defendant Calder because Calder dominates and disregards Rolston's corporate form to the extent that Calder is actually carrying on the business and operations of Rolston as if the same were its own.

22.    Defendants Rolston and Calder share a common address of: Voula, Vas. Pavlou, Athens, Greece.

23.    Upon information and belief, Defendant Rolston acts as paying agent, or receiving agent, or arranges for other non-parties to satisfy the debts and obligations of Defendant Calder, and/or receive payments being made to Defendant Calder.

24.    Specifically, Defendant Rolston made at least three freight payments due and owing under the subject charter party on behalf of defendant Calder to the Plaintiff. *See Freight Payments annexed hereto as Exhibit "2."*

25.    Upon information and belief, Defendant Calder uses Defendant Rolston as a "pass through" entity such that it can insulate itself from creditors relating to its commercial obligations.

26.    Although Rolston was not named in the charter party, and had no formal relationship to the charter of the Vessel they entered into an agreement by which they paid installments of the freight owing to Plaintiff from Calder.

27.    It is not common practice in the maritime industry for an independent company to pay another company's debt, where it has no formal relationship to the underlying charter parties.

28.    Upon information and belief, Defendant Rolston is a shell-corporation through which Defendant Calder conducts its business.

29.    Upon information and belief, Defendant Rolston has no separate, independent identity from Defendant Calder.

30.    In the further alternative, Defendants Rolston and Calder are partners or joint venturers.

31.    Upon information and belief, Defendant Fenby is the alter ego of Defendant Calder because Calder dominates and disregards Fenby's corporate form to the extent that Calder is actually carrying on the business and operations of Fenby as if the same were its own.

32.    Upon information and belief, Defendants Fenby and Calder share a common address of: Voula, Vas. Pavlou, Athens, Greece and common phone (+30210-9659910) and fax numbers (+30210-9659466).

33.    Upon information and belief, Defendant Fenby is a shell-corporation through which Defendant Calder conducts its business.

34.    Upon information and belief, Defendant Fenby has no separate, independent identity from Defendant Calder.

35.    Upon information and belief, Fenby has been described in the shipping industry as a "paper company." Further, the Plaintiff commissioned company searches through Lloyd's MIU and Factiva which yielded no results except that Fenby is registered in the Marshall Islands.

36.    In the further alternative, Defendants Fenby and Calder are partners or joint venturers.

37.    The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, ABN-AMRO, American Express Bank, Bank of America, Bank of New York, Deutsche Bank, Citibank, HSBC Bank USA Bank, J.P. Morgan Chase, Standard Chartered Bank and/or Wachovia Bank N.A., which are believed to be due and owing to the Defendant.

-6-

38.    The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims attaching any assets of the Defendants held by the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendants, and to secure the Plaintiff's claims as described above.

**WHEREFORE,** Plaintiff prays:

A.    That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Verified Amended Complaint;

B.    That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and federal common law attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, ABN-AMRO, American Express Bank, Bank of America, Bank of New York, Deutsche Bank, Citibank, HSBC Bank USA Bank, J.P. Morgan Chase, Standard Chartered Bank and/or Wachovia Bank N.A. which are due and owing to the Defendants, in the amount of **$482,775.72** to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Verified Amended Complaint;

C.    That this Court recognize and confirm any foreign judgment/award of costs on the claims had herein as a judgment of this Court;

–7–

D.     That this Court retain jurisdiction over this matter through the entry of any

judgment or award associated with any of the claims currently pending, or which may be

initiated in the future, including any appeals thereof; and

E.     That the Plaintiff have such other, further and different relief as the Court

may deem just and proper.

Dated: March 14, 2008
       New York, NY

                                   The Plaintiff,
                                   GOODEARTH MARITIME LTD.,


                          By:

                                   Lauren C. Davies (LD 1980)
                                   Thomas L. Tisdale (TT5263)
                                   TISDALE LAW OFFICES, LLC
                                   11 West 42nd Street, Suite 900
                                   New York, NY 10036
                                   (212) 354-0025 (Phone)
                                   (212) 869-0067 (Fax)
                                   ldavies@tisdale-law.com
                                   ttisdale@tisdale-law.com

## ATTORNEY VERIFICATION

State of Connecticut  )
                  )   ss: SOUTHPORT
County of Fairfield  )

1.     My name is Lauren C. Davies.

2.     I am over 18 years of age, of sound mind, capable of making this Verification and fully competent to testify to all matters stated herein.

3.     I am the attorney for the Plaintiff in this action. I am fully authorized to make this Verification on its behalf.

4.     I have read the foregoing Verified Amended Complaint and the contents thereof are true and accurate to the best of my knowledge, information and belief.

5.     The reason that this Verification was made by me and not the Plaintiff is that the Plaintiff is a corporation none of whose officers are present in this District.

6.     The source of my knowledge is information and records furnished to me by the Plaintiff and its counsel, all of which I believe to be true and accurate.

Dated: March 14, 2008
       Southport, Connecticut

Lauren C. Davies

—9—

# EXHIBIT 1

| GOODEARTH MARITIME LTD | Debit Note No. GML/GT/CALDER/V37-06/07-08 |
| TVH PHASE II , 5TH FLOOR | Date: 08.03.08 |
| BLOCK NO 94 , BELICIAA TOWERS | |
| MRC NAGAR , CHENNAI 6000 028 | Damages for Detention at dischrge port |
| Ph +91 44 43033444 (10 lines)  Fax +91 44 43033555 | (Misurata) |

TO
CALDER SEACARRIER CORP.

| | Amount in USD |
|---|---|
| M.V.GOOD TRADE                                    c/p dated 04.01.08 | |
| | |
| Vessel arrived off Misurata            9.000 days | |
| 28.02.08-0030 hrs and estimated | |
| waiting time till full freight is paid - | |
| 08.03.08-0030 hrs | |
| Detention charges per day        30000.00 usd | |
| | 270,000.00 |
| Estimated cost of legal and other expenses due to charterers failure to pay freight and | 50,000.00 |
| issue of illegal bills of lading in breach of cp terms. | |
| Underwater diving expenses incurred at Singapore for vessel's touching bottom | 6,000.00 |
| at Shangai due to unsafe berth provided by charterers | |
| For Credit | |
| Correspondant Bank in Newyork | |
| Bank of America | |
| 100 West, 33rd Street, 4th Floor | |
| New York NY 10001 | |
| Quoting our UID 113846 - via Chips or via Fedwire to | |
| ABA No. 026009593 | |
| A/c No. 6550-5-91876 of Canara Bank, Chennai,India | |
| | |
| Further credit to : | |
| Beneficiary : Goodearth Maritime Ltd | |
| Account no : GA 471 | |
| Canara Bank  Overseas Branch, Chennai | |
| Swift: CNRBINBBMOB | |
| Chennai 600 002. | |
| India | |
| Amount Payable (in words) **Total** | **326,000.00** |

(US Dollars Three Hundred Twenty Six Thousand Only)

Signature

For Goodearth Maritime Ltd

Capt.C.Murali Krishna
Joint-General Manager -Operations

GOODEARTH MARITIME LTD
TVH PHASE II, 5TH FLOOR
BLOCK NO 94 , BELICIAA TOWERS
MRC NAGAR , CHENNAI 6000 028
Ph +91 44 43033444 (10 lines) . Fax +91 44

| Debit Note No : GML/CALDER/C/0506/2008 | |
| --- | --- |
| Date: | 05.03.08 |
| Interest on unpaid proportionate freight due advice for | |
| 1 st and    2nd load port | |

TO
CALDER SEACARRIER CORP.

| | Amount in USD |
| --- | --- |

M.V.GOOD TRADE                                      c/p dated 04.01.08

| | | |
| --- | --- | --- |
| Propotionate initial freight due advice dt 22.01.08 for 1st load port (net of comissions) | $2,108,218.17 | |
| Loading completed on 22.01.08 | overdue from 25.01.08 | |
| Interest @ 15.25 % P.A. on USD 2108218.17 from 25.01.08 - 28.01.08 | $ 2108218.17 x 15.25% x 4 days/ 366 days | 3,513.70 |
| Amount recieved from charterers on 29.01.08 | $500,000 | |
| unpaid balance fright on 1st load port invoice  $ | 1608218.17 | |
| Interest @ 15.25 % P.A. on USD 1608218.17 from 29.01.08-04.02.08 | $ 1608218.17 x 15.25% x 7 days/ 366 days | 4,690.64 |
| Amount received from charterers on 05.02.08 | $620,000 | |
| unpaid balance freight  on 1st load port invoice $ | 988218.17 | |
| Interest @ 15.25% P.A. on USD on 988218.17 from 05.02.08-14.02.08 | $ 988218.17 x 15.25% x 10 days/ 366 days | 4,117.58 |
| Amount recieved from charterers on 15.02.08 | $985,000 | |
| unpaid balance freight  on 1st load port as on 15.02.08 3218.17 $ | | |
| Interest @ 15.25 % P.A. on 1st load port invoice from 15.02.08-03.03.08 | $ 3218.17 x 15.25% x 23 days/ 366 days | 30.84 |
| Propotionate initial freight due advice dt 30.01.08 for 2nd load port (net of comissions) | $1,159,469.33 | |
| Loading completed on 28.01.08 | overdue from 01.02.08 | |
| Interest @ 15.5 % P.A. on USD 1159469.30 from 01.02.08 - 08.03.08 | $ 1159469.30 x 15.25% x 37 days/ 366 days | 17,875.15 |

For Credit
Correspondant Bank In Newyork
Bank of America
100 West, 33rd Street, 4th Floor
New York, NY 10001
Quoting our UID 113846 – via Chips or via Fedwire to
ABA No. 026009593
A/c No. 6550-5-91676 of Canara Bank, Chennai,India

Further credit to :
Beneficiary : Goodearth Maritime Ltd
Account no : GA 471
Canara Bank, Overseas Branch, Chennai
Swift: CNRBINBBMOB
Chennai 600 002.
India

Note : 1).Interest on 1st load port unpaid freight of $ 3218.17 would continue to accrue at the rate of $ 1.34 for every day from 03.03.08 till the date of payment.

2) Interest on 2nd load port unpaid freight of $ 1159469.33 would continue to accrue at the of $ 483.11 for every day from 08.03.08 till the date of payment.

| | 30,227.91 |
| --- | --- |

Amount Payable :
(In words)
(US Dollars Thirty Thousand Two Hundred Twenty Seven and cents Ninety one only)

Signature
For Goodearth Maritime Limited

Capt.C.Murali Krishna
Joint Genral Manager - Operations

# EXHIBIT 2

केनरा बैंक

CANARA BANK

GTT 272-08

```
***** RECEIVED MESSAGE *****                    15-FEB-2008 19:55   page no : 9209
Sts : MESSAGE DELIVERED
tion : 2              BEGINNING OF MESSAGE
```

```
D  *FIN/Session/OSN        :F01   9842    292578
D  *Own Address            :CNRBINBBAWID  CANARA BANK
D  *                                      MUMBAI
D  *                                      (INTERNATIONAL DIVISION)
D  *Output Message Type     :103          SINGLE CUSTOMER CREDIT TRANSFER
D  *Input Time              :1356
D  *MIR                     :080215PIRBGRAAAXXX4779570261
D  *Sent by                 :PIRBGRAAAXXX  PIRAEUS BANK SA
D  *                                       ATHENS
D  *Output Date/Time        :080215/1726
D  *Priority                :Normal
D  *

*UST (119:STP)

*20:/SENDER'S REFERENCE
   F926T0903508LC
*23B/BANK OPERATION CODE
   CRED
*32A/VAL DTE/CURR/INTERBNK SETTLE AMT
   080215USD985000
                      15-FEB-2008
                      US Dollar
*33B/CURRENCY/INSTRUCTED AMOUNT
   USD985000
                      US Dollar
*50K/ORDERING CUSTOMER-NAME & ADDRESS
   /GR1601724148055114033951/01
   ROLSTON ENTERPRISES LIMITED
   VOULA
   VAS. PAVLOU
   190          TK 16673
*53A/SENDER'S CORRESPONDENT - BIC
   IRVTUS3NXXX
                      BANK OF NEW YORK
                      NEW YORK, NY
*54A/RECEIVER'S CORRESPONDENT - BIC
   BOFAUS3N
                      BANK OF AMERICA, N.A.
                      NEW YORK, NY
*57A/ACCOUNT WITH INSTITUTION - BIC
   CNRBINBBMDS
                      CANARA BANK
                      CHENNAI (MADRAS)
                      (CHENNAI OVERSEAS BRANCH)
*59 /BENEFICIARY CUSTOMER-NAME & ADDR
   /60471
   GOODEARTH MARITIME LTD
*70 /REMITTANCE INFORMATION
   M/V GOOD TR-PAYMENT OF FREIGHT
*71A/DETAILS OF CHARGES
```

985,000.00

44471    @-39/63500

RTH MARITIME LTD
RTH CRESCENT ROAD
R, CHENNAI-17
, TAMIL NADU -600017

CANARA BANK
OVERSEAS BRANCH CHENNAI
GROUND FLOOR SPENCER'S TOWER II,
770-A  ANNA SALAI CHENNAI 600002 INDIA
CHENNAI, TAMIL NADU -600002

30-01-2008

FOREIGN BILLS TRANSACTION ADVICE

o. FITT-163-2008
ction Id : 5C0561394

Operation : Realisation
Transaction Date : 30-01-2008
VALUE DATE : 29-01-2008

er Details:               KINGSTON
cy Conversion Details are as below :

| From Currency / Amount | Rate | To Currency / Amount |
|---|---|---|
| se 1    USD    500000.00 | 39.3550 | INR    19677500.00 |

ction Details are as below :

| t | Account Number | Transaction Currency — | Amount | Cr/ Dr | |
|---|---|---|---|---|---|
| ation | Office Acct | INR | 19677500.00 | Dr | |
| ive | EWGA000000471 | INR | 19677500.00 | Cr | 39.3550 |
| sion | Office Acct | INR | 125.00 | Cr | |
| arge | Office Acct | INR | 15.00 | Dr | |
| ive | EWGA000000471 | INR | 140.00 | Dr | |

Cred Funds -v 37

CANARA BANK

To,
GODDEARTH MARITIME LTD
32-D NORTH CRESCENT ROAD
T NAGAR, CHENNAI-17
CHENNAI , TAMIL NADU -600017
INDIA

CANARA BANK
OVERSEAS BRANCH CHENNAI
GROUND FLOOR SPENCER'S TOWER II,
770-A ANNA SALAI CHENNAI 600002 INDIA
CHENNAI , TAMIL NADU -600002    06-02-2008

FOREIGN BILLS TRANSACTION ADVICE

Bill No.  FIIT-21A-2008
Transaction Id : SC05562572

Operation : Realisation
Transaction Date : 06-02-2008
VALUE DATE : 06-02-2008

Remitter Details:
Currency Conversion Details are as below :

Transaction Details are as below :

| From Currency / Amount | | Rate | To Currency / Amount | |
|---|---|---|---|---|
| If Purchase :  USD | 620000.00 | 39.5700 | INR | 24533400.00 |

| Account Type | Account Number | Transaction Currency — Amount | | Cr/Dr |
|---|---|---|---|---|
| Realisation Office Acct | EWGA0000000471 | INR | 24533400.00 | Dr |
| Operative | | INR | 24493400.00 | Cr |
| Commission Office Acct | | INR | 125.00 | Cr |
| P&T Charge Office Acct | | INR | 13.00 | Cr |
| Operative | EWGA0000000471 | INR | 140.00 | Dr |

To,
GOODEARTH MARITIME LTD
32-D NORTH CRESCENT ROAD
T NAGAR, CHENNAI-17
CHENNAI ,TAMIL NADU -600017
INDIA

                                    CANARA BANK
                                    OVERSEAS BRANCH CHENNAI
                                    GROUND FLOOR SPENCER'S TOWER II,
                                    770-A' ANNA BALAI CHENNAI 600002 INDIA
                                    CHENNAI, TAMIL NADU -600002
                                                              19-02-2008

# FOREIGN BILLS TRANSACTION ADVICE

Bill No. FITT-2772-2008              Operation : Realisation
Transaction Id : SC0564394          Transaction Date : 18-02-2008
                                    VALUE DATE :: 18-02-2008

Remitter Details:
Currency Conversion Details are as below :

FOREIGN ENTERPRISES LTD

| From Currency / Amount | | Rate | To Currency / Amount | |
|---|---|---|---|---|
| Purchase :  USD  985000.00 | | 39.6350 | INR  39040475.00 | |

Transaction Details are as below :

| Account Type | Account Number | Transaction Currency | Transaction Amount | Cr/ Dr |
|---|---|---|---|---|
| Realisation Office Acct | EWGA00200471 | INR | 39040475.00 Dr | |
| Operative | EWGA00200471 | INR | 39040475.00 Cr | 39.6350 |
| Commission Office Acct | | INR | 125.00 Cr | |
| P&T Charge Office Acct | | INR | 15.00 Cr | |
| Operative | EWGA00200471 | INR | 140.00 Dr | |

# EXHIBIT 2

## Dawn Kubie

| | |
|---|---|
| **From:** | Kevin McGee [KMcGee@rawle.com] |
| **Sent:** | Friday, June 20, 2008 3:46 PM |
| **To:** | TL |
| **Cc:** | Carl Buchholz; Lilian Philiposian; Kenneth Manyin |
| **Subject:** | Goodearth Maritime Ltd. v. Calder Seacarrier Corp a.k.a. Calder Sea Carrier Corp., Rolston Enterprises Ltd, Fenby Company Limited a.k.a. Fenby Co. Ltd. - SDNY 08-2028 |

**Importance:** High

All:

A wire came through The Bank of New York Mellon today for funds in the amount of $1,398,750.00, being wire transferred from "Fenby Company Limited, Voula, V. Pavlou, 108 TK 16673" to "Baja Ferries USA LLC" referencing "M/V RENATA - Payment of Freights."

Please advise if plaintiff contends these funds should be restrained, pursuant to the Writ served on the Bank in the above matter.

Very Respectfully,

Kevin L. McGee, Esquire
Rawle & Henderson, LLP
The Widener Building
One South Penn Square
Philadelphia, PA 19107
215-575-4431 - Phone
215-563-2583 - Fax

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, is prohibited and may be unlawful.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT 3

Cardillo & Corbett
Attorneys for Plaintiff
BAJA FERRIES USA LLC
29 Broadway
New York, New York 10006
Tel: (212) 344-0464
Fax: (212) 797-1212
James P. Rau (JR-7209)



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
BAJA FERRIES USA LLC,          :
                               :
                    Plaintiff, :    **ECF**
                               :    **VERIFIED COMPLAINT**
           -against-           :
                               :
CALDER SEACARRIER CORP.        :
a/k/a CALDER SEA CARRIER CORP.,:
FENBY CO. a/k/a FENBY CO. LTD.,:
UNITED SHIPPING AGENCY SRL,    :
BRISTOL MARINE CO. LTD. and BML:
CHARTERING                     :
                               :
                    Defendants.:
------------------------------------x

        Plaintiff, BAJA FERRIES USA LLC, ("Plaintiff"), by

and through its attorneys, Cardillo & Corbett, as and for its

Verified Complaint against the Defendants, CALDER SEACARRIER

CORP. a/k/a CALDER SEA CARRIER CORP. ("Calder"), FENBY CO.

a/k/a FENBY CO. LTD. ("Fenby"), UNITED SHIPPING AGENCY SRL

("United"), BRISTOL MARINE CO. LTD. ("Bristol") and BML

Chartering ("BML") alleges, upon information and belief as

follows:

                        JURISDICTION

        1.   This is an admiralty and maritime claim within

the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333.

## THE PARTIES

2.   At all material times to this action Plaintiff was, and still is, a business entity duly organized and existing under the laws of the state of Florida with an address at 2601 S. Bayshore Drive, Suite 1110, Coconut Grove, Florida, 33133.

3.   At all times material to this action, Calder was, and still is, a foreign business entity organized and existing under the laws of a foreign country with an address at 18 Vas Paulou STR, Athens, Greece.  Upon information and belief, Calder is known as CALDER SEACARRIER CORP. and CALDER SEA CARRIER CORP.

4.   At all times material to this action, Fenby was, and still is, a foreign business entity organized and existing under the laws of a foreign country with upon information and belief has an address at 18 Vas Paulou STR, Athens, Greece.  Upon information and belief, Fenby, is known as FENBY CO. and FENBY CO. LTD.

5.   At all times material to this action, United was, and still is, a foreign business entity organized and existing under the laws of a foreign country with an address at Constantza Port, Berth No. 31, Constantza 900900, Romania.

2

6.    At all times material to this action, Bristol was, and still is, a foreign business entity organized and existing under the laws of a foreign country with an address at 80 Broad Street, Monrovia, Liberia.

7.    At all times material to this action, BML was, and still is, a foreign business entity organized and existing under the laws of a foreign country with an address at 11 Argonafton Street and Koral, Illoupis 163 46, Athens, Greece.

<u>CALDER'S BREACH OF CONTRACT</u>

8.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-7 of this Complaint as if set forth at length herein.

9.    Pursuant to a voyage charter party dated June 6, 2008, Plaintiff, as disponent owner, chartered the M/V RENATA (the "Vessel") to Calder, as Charterer, to carry a cargo of about 10,500 metric tons of cargo from Constantza, Romania to Mombasa, Kenya (the "Charter Party").

10.   Under the terms of the Charter Party freight was a lumpsum in the amount of $1,500,000.00, ninety-seven percent of which, less commissions, or $1,398,750, was to be prepaid within three days of completion loading.

11.   The Vessel properly loaded its cargo in Romania.

3

13.   Three banking days later, Calder failed to pay the full freight due to Plaintiff under the Charter Party.

14.   Rather, on or about June 20, 2008, a payment was remitted by defendant Fenby on behalf of Calder to Plaintiff in the amount of $1,398,750.  However, a third party creditor of Calder attached $482,775.72 of this freight payment, pursuant to a Admiralty Rule B action and maritime attachment before this court (08 Civ. 2028 (RMB), alleging Fenby to be Calder's alter ego.

15.   As a result of the above, Calder has failed to pay $482,775.72 in freight to Plaintiff, despite the continuing demand that it do so.

16.   By reason of the aforesaid, Plaintiff has suffered damages in the amount of $482,775.72, so near as the same can be presently estimated, no part of which has been paid although duly demanded, and is entitled to interest, cost and attorneys' fees, as set forth below.

17.   The Charter Party provides that any disputes arising under the Charter Party shall be referred to arbitration in London, England.  English law is applicable under the Charter Party.

18.   Plaintiff has commenced arbitration against Calder as authorized by the terms of the Charter Party.

19.   Interest, cost and attorney's fees are

4

routinely awarded to the prevailing party by arbitrators in
London pursuant to English law. As best as can now be
estimated, the following amounts can be expected to be
recovered in the action.

| | | |
|---|---|---|
| A. | On the principal claim: | $482,755.72 |
| B. | Interest at 6% for 2 years: | $ 57,533.09 |
| C. | Arbitration fees and attorneys' fees: | $100,000.00 |
| | TOTAL: | $640,708.81 |

AS AND FOR PLAINTIFF'S CLAIM
<u>AGAINST DEFENDANT FENBY</u>

20.    Plaintiff repeats and realleges each and every
allegation contained in paragraphs 1-19 of this Complaint as
if set forth at length herein.

21.    Upon information and belief, Fenby is the
alter ego of Calder because Calder dominates and disregards
Fenby's corporate form to the extent that Calder is actually
carrying on the business of Fenby as if it were its own.

22. Upon information and belief, Fenby acts as
paying agent, or arranges to satisfy for other non-parties
the debts and obligations of Calder, and/or receives payments
being made to Calder.

23. Specifically, Fenby remitted the total freight
payment due and owing under the Charter Party of some
$1,400,000 on behalf of Calder to the Plaintiff.

5

24.   Although Fenby is not named in the Charter Party and has no formal relationship under the Charter Party, it paid the freight payment due and owing by on behalf of Calder.

25.   It is not common practice in the maritime industry for an independent company to pay another company's debts, where it has no formal relationship under the subject charter parties.

26.   Upon information and belief, Fenby is a shell corporation through which Calder conducts its business.

27.   Upon information and belief, Fenby has no separate, independent identity from Calder.

28.   Upon information and belief, Calder uses Fenby as a "pass through" entity such that it can insulate itself from its creditors.

29.   In the alternative, Calder and Fenby are partners or joint venturers.

30.   By reason of the foregoing conduct of Calder and Fenby, Plaintiff has sustained damages as described above.

### AS AND FOR PLAINTIFF'S CLAIM AGAINST DEFENDANTS UNITED, BRISTOL AND BML

31.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-30 of this Complaint as if set forth at length herein.

6

32.    United was appointed agent in the load port by Calder. As part of its duties, United was to prepare and issue bills of lading under the Charter Party.

33.    The Charter Party provided that if bills of lading were marked "freight prepaid" that they would not be released from the agent's custody until Plaintiff confirmed receipt of the freight in Plaintiff's bank account.

34.    Calder requested United to prepare bills of lading marked freight prepaid.

35.    On or about June 18, 2008, Plaintiff instructed United not to release the bills of lading until given express authority to do by Plaintiff, based on the terms of the Charter Party, namely, that such bills of lading would not be released until Plaintiff advised that the freight was in its bank account.

36.    On June 18, 2008, United confirmed Plaintiff's instructions and that it would act accordingly.

37.    On or about June 20, 2008, defendants Bristol and BML, without any authority from Plaintiff, instructed United to release the freight prepaid bills of lading and United did so.

38.    In so releasing the bills of lading without the consent of Plaintiff, United violated the terms of the Charter Party, its express agreement with Plaintiff and its obligations as a bailee of the bills of lading.

7

39.   Bristol and BML in wrongfully directing the release of these bills of lading tortiously interfered with Plaintiff's contract rights under the Charter party and bills of lading.

40.   As a result of defendants' concerted action in releasing freight prepaid bills of lading, Plaintiff was unable to exercise a lien on the cargo for payment of the freight that remained outstanding in the amount of $482,755.72.

41.   By reason of the foregoing, Plaintiff has sustained damages in the amount $482,755.72.

<u>DEFENDANTS NOT FOUND WITHIN THE DISTRICT</u>

42.   The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, property within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, ABN Amro Bank NV, American Express Bank, Banco Popular, Bank Leumi, Bank of America, Bank of China, Bank of Communications Co. Ltd. New York Branch, Bank of India, Bank of New York, Barclays Bank, BNP Paribas, Calyon, Citibank, Commerzbank, Deutsche Bank, HSBC (USA) Bank, J.P. Morgan Chase, Standard Chartered Bank, State

8

Bank of India, Societe Generale, UBS AG and/or Wachovia Bank, which are believed to be due and owing to Defendant.

43. Plaintiff seeks an order from this court directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any property of Defendants held by the aforesaid garnishees for the purpose of obtaining personal jurisdiction over Defendant and to secure Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against Defendant citing it to appear and answer under oath all and singular the matters alleged in the Complaint.

B. That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, ABN

9

Amro Bank NV, American Express Bank, Banco Popular, Bank
Leumi, Bank of America, Bank of China, Bank of Communications
Co. Ltd. New York Branch, Bank of India, Bank of New York,
Barclays Bank, BNP Paribas, Calyon, Citibank, Commerzbank,
Deutsche Bank, HSBC (USA) Bank, J.P. Morgan Chase, Standard
Chartered Bank, State Bank of India, Societe Generale, UBS AG
and/or Wachovia Bank, which are due and owing to Defendants,
in the amount of $640,708.81 and $482,775.72 respectively,
to secure Plaintiff's claims and that all persons claiming
any interest in the same be cited to appear and pursuant to
Rule B of the Supplemental Rules for Certain Admiralty and
Maritime Claims answer the matters alleged in the Complaint.

       C.    That this Court retain jurisdiction over this
matter through the entry of any judgment or award associated
with any of the claims currently pending, or which may be
initiated in the future, including any appeal thereof; and

       D.    That the Plaintiff has such other, further and
different relief as the Court may deem just and proper.

Dated:    New York, New York
          July 2, 2008

                        CARDILLO & CORBETT
                        Attorneys for Plaintiff
                        BAJA FERRIES USA LLC

By:                                  
                        James P. Rau (JR 7209)

                           10

Office and P.O. Address
29 Broadway, Suite 1710
New York, New York 10006
Tel: (212) 344-0464
Fax: (212) 797-1212

**ATTORNEY'S VERIFICATION**

State of New York )
                 ) ss.:
County of New York)

    1.   My name is James P. Rau.

    2.   I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

    3.   I am a partner in the firm of Cardillo & Corbett, attorneys for the Plaintiff.

    4.   I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

    5.   The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

    6.   The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

    7.   I am authorized to make this Verification on

12

behalf of the Plaintiff.

_____
James P. Rau

Sworn to this 2nd day
of July, 2008

_____
NOTARY PUBLIC

**TULIO R. PRIETO**
Notary Public, State of New York
No. 02PR6070011
Qualified in Richmond County
Certificate Filed in New York County
Commission Expires February 19, 2010

13

# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
GOOD EARTH MARITIME LTD.,

         Plaintiff,

    - against –

CALDER SEACARRIER CORP.,
a.k.a. CALDER SEA CARRIER CORP.,
ROLSTON ENTERPRISES LTD., and
FENBY COMPANY LIMITED a.k.a FENBY
CO. LTD

         Defendants.
-----------------------------------------------------X

08 CV 2028 (RMB)
ECF CASE

## <u>DECLARATION OF PANOS MICHALITSES</u>

I, PANOS MICHALITSES, of 145 Koloktroni Street, Piraeus, Greece hereby
declare as follows:-

1.    I am the manager of Fenby Company Limited ("Fenby") and have the
responsibility for its day to day business especially its vessel chartering
activities. I am making this statement to ask the Court to vacate the
attachment under an order made by this Court in this case, of
US$482,775.72 belonging to Fenby which was being paid by Fenby to
a third party. I understand this money has been attached because it
has been claimed by the Plaintiff that Fenby is an "alter ego" of Calder
Seacarrier Corp or just a shell corporation through which Calder
Seacarrier Corp carries on its business.

2.    I also understand that the Plaintiff bases this only on the claim that
Fenby and Calder are supposed to have the same address, phone and

fax number which the Plaintiff gives as Voula, Vas.Pavlou, Athens, Greece; phone +30210-9659910; fax +30210-9659466.

3.    I confirm that Fenby, which is a company incorporated under the laws of the Marshall Islands, is not an "alter ego" of Calder Seacarrier Corp or a shell corporation through which Calder Seacarrier Corp carries on its business and also that Fenby's address and phone/fax details are completely different from Fenby. These details are:

> 145 Kolokotroni Street
>
> Piraeus
>
> Greece
>
> Tel/Fax:210 4186485

The statements made on behalf of the Plaintiff are therefore completely wrong and the attachment of the above mentioned money of Fenby is on a completely wrong basis. Fenby is an independent company and its monies should not be attached in this matter, and on behalf of Fenby I reject any suggestion otherwise.

4.    Also, I have today approached Fenby's bank, the Piraeus Bank SA Agias Triadas Branch, and in particular Mr Nikos Tsanis who is the manager of that branch. I attach to this declaration a true copy of the confirmation to that the Piraeus Bank SA Agias Triada branch has provided me to be presented to the Court, which confirms Fenby's address and telephone number.

2

5.    Pursuant to 28 U.S.C.§1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed

PANOS MICHALITSES

At Piraeus this 24th day of June 2008



To

FENBY COMPANY LIMITED

Piraeus, June, 24, 2008

Dear sir/s,

We the undersigned PIRAEUS BANK S.A. AGIAS TRIADAS Branch in reply to your relevant written request, dated June, 23, 2008, we confirm that according to the elements Fenby has provided us, with,

FENBY COMPANY LIMITED is a Marshall Island company, operating from the following address :

145, KOLOKOTRONI STR

18536, PIRAEUS, GREECE

Tel. 210 4186485

Yours Sincerely,

PIRAEUS BANK S.A.

Agja Triada BRANCH

Nikos Tsanis

# EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

CALDER SEACARRIER CORP.,                          **07 CV 6520 (LAK)**

                    Plaintiff,

        - against –

VIKING MARINE S.A. and SINORICHES GLOBAL
LTD. a/k/a SGL SHIPPING LIMITED,

                    Defendants.

-----------------------------------------------------------X

I, Captain Panagiotis Mihalitsis, manager in the chartering department of
Calder Seacarrier Corp., address 108 Vas. Paulou Ave, Voula, Athens-Greece,
declare as follows:

**1.** I work as chartering manager in Calder Seacarrier Corp's office since
January 2000. I am the person responsible to secure the cargoes to be loaded
on board the Calder's chartered tonnage.

**2.** In this capacity I have many times concluded fixtures via the broking
channel 'Seapride Maritime Services Piraeus' for all the Sinoriches' cargoes
which for the reference I include here below and true copies of all these
fixture recaps are attached to this declaration marked "Exhibit PM 1" to this
declaration:

        a) m/v Sargodha

        b) m/v Asha Manan

        c) m/v Xuan De Men

d) m/v Fuzhou

e) m/v Trader

f) m/v Vera

**3.** Our last fixture with Sinoriches was the cargoes to be loaded on m/v Vera and the c/p between Calder and Sinoriches was concluded on the 7th June 2007 via the brokers 'Seapride Maritime Services Piraeus'.

**4.** 'Seapride Maritime Services Piraeus' was the Sinoriches broker who had always the Sinoriches' authority to conclude the charter party. All the fixtures were negotiated via emails or faxes and the same procedure was also followed for the last fixture with Sinoriches for m/v Vera.

Pursuant to 28 U.S.C.§1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed_____

At Athens this 3rd day of October 2007

# EXHIBIT 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------X
DS BULK PTE. LTD.,                                    05 CV 10146 (SHS)

                                Plaintiff,           DECLARATION

        -against-

CALDER SEACARRIER CORPORATION,

                                Defendant.
-------------------------------------------X

        I, CAPTAIN PANAGIOTIS MIHALITSIS, hereby declare as follows:

        1.    I am employed as the Manager responsible for the
Operation Department of Universal Cargo Lines (UCL).  Based upon
my personal knowledge and my review of the file maintained by my
office, I am familiar with the corporate structure and operations
of UCL in this and other matters.

        2.    Herewith attached are true copies of the following:

            Exhibit A:    Plaintiff's Complaint;

            Exhibit B:    Affidavit under Supplemental Rule B;

            Exhibit C:    Order Directing Clerk to Issue Process
                          of Maritime Attachment and Garnishment;

            Exhibit D:    Fixture Note and Charter Party between
                          defendant CALDER SEACARRIER CORPORATION
                          (CALDER), as disponent owner, and UCL,
                          as charterer, with respect to the M/V
                          ASHA MANAN;

            Exhibit E:    Fixture Note and Charter Party between
                          UCL, as disponent owner, and Shanghai
                          Maohung Logistics Co., Ltd. (SML), as
                          charterer, with respect to the M/V ASHA
                          MANAN;

            Exhibit F:    Freight Invoice from UCL to SML with
                          respect to the M/V ASHA MANAN
                          subcharter;

Exhibit G:    Fixture Note and Charter Party between
              UCL, as disponent owner, and Medasia
              Shipping Ltd. (Medasia), as charterer,
              with respect to the M/V FUZHOU;

Exhibit H:    Freight Invoice from UCL to Medasia with
              respect to the M/V FUZHOU;

Exhibit I:    Bank Swift details for Medasia's freight
              payment with respect to the M/V FUZHOU;

Exhibit J:    Debit  Advice  for  Medasia's  freight
              payment with respect to the M/V FUZHOU;

Exhibit K:    E-Mail  from  plaintiff's  counsel  dated
              January 26, 2006;

Exhibit L:    Letter from Piraeus Bank dated January
              31, 2006;

Exhibit M:    Certificate concerning the incorporation
              of CALDER;

Exhibit N:    Certificate concerning the incorporation
              of UCL; and

Exhibit O:    Purported Freight Invoice disclosed by
              plaintiff's counsel.

3.    Plaintiff's Complaint seeks damages from CALDER for alleged breach of a charter party between plaintiff and CALDER with respect to the M/V ASHA MANAN. (Exhibit A). My understanding is that the dispute which forms the basis of this lawsuit is also the subject of a London arbitration, to which UCL is not a party. Id.

4.    UCL is not named as a defendant or as a garnishee in this action either. Id. Nor do the Complaint or the Affidavit under Supplemental Rule B even aver that UCL can not be found within this District. (Exhibit A; Exhibit B). Rather, the Complaint alleges, without any further particularity, that

2

"Defendant paid freight charges under this charter party through the account of a company named Universal Cargo Lines S.A., which is either Defendant's agent or its alter ego for the purpose of avoiding having funds in its own name which might be subjected to an attachment." (Exhibit A).

5.    Accordingly, the Court entered an <u>ex parte</u> Order directing the Clerk to issue process of maritime attachment and garnishment against property belonging to UCL, as well as CALDER. (Exhibit C).  However, inasmuch as UCL is not a party to either this lawsuit or the London arbitration and no proceedings have been initiated to determine whether UCL really is an alter-ego of CALDER, the Order essentially holds and renders unusable UCL's assets to secure a claim which has not been and may never be brought.

6.    The ASHA MANAN was actually sub-chartered from CALDER to UCL.  (Exhibit D).  UCL, in turn, sub-chartered the ASHA MANAN yet again to SML.  (Exhibit E).

7.    Freight was paid by SML to UCL, not to CALDER. (Exhibit F).  At CALDER's request, a portion of the freight owing by UCL to CALDER under the CALDER-UCL sub-charter was then paid directly from UCL to plaintiff in satisfaction of freight owed by CALDER to plaintiff under the head charter party, and the balance was paid by UCL to CALDER.  This was the only reason freight was provided to plaintiff by UCL, rather than CALDER, and this completely innocent transaction apparently represents the sole basis for plaintiff's erroneous allegation that CALDER and UCL are

3

corporate "alter-egos."

8.   With respect to a totally different shipment, which did not involve plaintiff or CALDER, Tian Heng Shipping Limited (THC) chartered the M/V FUZHOU to UCL, which sub-chartered the FUZHOU to Medasia.   (Exhibit G).   As with the ASHA MANAN freight, Medasia was asked to, and did in fact, pay a portion of the freight due on the sub-charter directly to THC in satisfaction of the freight due from UCL on the head charter and the remainder, amounting to $56,042.20, to UCL.   (Exhibit H; Exhibit I; Exhibit J; Exhibit K; Exhibit L; Exhibit M).

9.   This $56,042.20, belonging only to UCL, is the res which has now been attached by virtue of the Court's Order.   Id.

10.   UCL and CALDER are totally separate and distinct corporate entities.   (Exhibit M; Exhibit N).   They share no common ownership, management or agency ties.   UCL has in no way succeeded to the interests of CLADER or acted as surety for any debts incurred by CALDER.   In fact, UCL and CALDER are often competitors, whose relations in this case were governed by an arms-length chartering arrangement.   Those charter parties, which are now before the Court, plainly belie any contention to the contrary.

11.   UCL just complied with a logistical request to send hire up the chartering chain in a manner which is not unusual in maritime practice.   Indeed, Medasia did the very same thing in the unrelated FUZHOU charter.

12.   When all of the above was presented to plaintiff's

4

counsel after UCL's funds were attached, plaintiff, by way of a response, produced from an unknown source a purported CALDER Freight Invoice, which, according to plaintiff, shows that CALDER issued the freight bill for the FUZHOU shipment, with the funds to be remitted in favor of UCL. (Exhibit O). But, to repeat, whatever point plaintiff may wish to make in reliance on this Invoice, CALDER had absolutely no involvement in the FUZHOU shipment, and UCL and CALDER are not corporate alter-egos. Your declarant has never seen this Freight Invoice before, and UCL has no knowledge whatsoever what it is or what it concerns. I note, however, that the document is undated, it does not say to whom it is addressed, and it does not identify the cargo loaded or the amounts due, even though the form contains spaces where such information was supposed to be entered. Id. The Invoice does mention the FUZHOU, but does not link the ship to any particular charter. Id. In fact, the Invoice refers to an "INCHON / ALGIERS FREIGHT PAYMENT," but UCL's FUZHOU charter party concerned a voyage from China to Syria, rather than Korea to Algeria. (Exhibit G).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 24, 2006

_____ (L.S.)
CAPTAIN PANAGIOTIS MIHALITSIS

5



**INVEST IN LIBERIA**

CONSULATE GENERAL OF THE REPUBLIC OF LIBERIA
2, EFPLIAS & AG. NICOLAOU STR.
PIRAEUS - GREECE

Piraeus ............ 29/10/01 ..................................

# C E R T I F I C A T E

IT IS HEREBY CERTIFIED that

**CALDER SEACARRIERS CORP.**

was incorporated in Monrovia, Liberia on

**FEBRUARY 14, 1997**

and is in existence.

NICK SOUTOS
Consul General
of the Republic
of Liberia

# EXHIBIT 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4|3|06 60

------------------------------------------------------------x

DS BULK PTE. LTD.,                              :          05 Civ. 10146 (SHS)
                                                :
                          Plaintiff,            :          MEMORANDUM
                                                :          ORDER
            -against-                           :
                                                :
CALDER SEACARRIER CORP.                         :
                                                :
                                                :
                          Defendants.           :
------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      Universal Cargo Lines ("Universal") moves to vacate a Process of Maritime Attachment

and Garnishment secured by DS Bulk Pte. Ltd. ("DS Bulk") on December 5, 2006 against Calder

Seacarrier Corporation ("Calder"), and thereafter levied against funds located in Universal's

bank account in the amount of $56,042.20. Because DS Bulk failed to name Universal as a party

to this action, or to aver that Universal could not be "found in" the district, the attachment is

vacated to the extent it concerns property belonging to Universal.

I.    Background

      According to the Complaint, DS Bulk chartered a vessel entitled the M/V Asha Manan to

Calder Seacarrier for a voyage from Korea and China to Turkey and Romania. (Compl. ¶ 4.)

During the course of this voyage, unpaid charges for demurrage and accommodation of Calder's

personnel accrued in the amount of $187,709.26. (Compl ¶ 5.) Calder failed to pay this amount,

and DS Bulk has submitted the claim for arbitration in London, England, pursuant to the terms of

the charter party. (Compl. ¶¶ 5, 6.) The Complaint also alleges that Calder "paid freight charges

under this charter party through the account of . . . Universal," who, the Complaint asserts, "is

1

either Defendant's agent or its alter ego for the purpose of avoiding having funds in its own name which might be subjected to an attachment." (Compl. ¶ 8.)

The Complaint and accompanying December 1, 2005 Affidavit by Jack A. Greenbaum declare that Calder could not be found within the district and request that the Court issue <u>ex parte</u> process of maritime attachment and garnishment in the amount of $337,709.26 against "Defendant's property in Defendant's own name or in the name of Universal Cargo Lines S.A." (Compl. ¶ 8.) The Court entered the attachment order on December 5, 2005.

Three months later, after having $56,042.20 of its funds captured by the attachment order, Universal filed the instant motion pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, requesting an order vacating the Process of Maritime Attachment "inasmuch as it concerns property belonging to [Universal]."

II.    Discussion

Under Supplemental Rule B, "an order of maritime attachment must issue upon a minimal prima facie showing," that the defendant cannot be "found within" the federal district in which the assets are to be attached. See <u>Ullises Shipping Corp. v. FAL Shipping Co. Ltd.</u>, 415 F. Supp. 2d 318, 322 (S.D.N.Y. 2006) (citing <u>Seaplus Line Co. v. Bulkhandling Handymax, AS</u>, 409 F. Supp. 2d 316 (S.D.N.Y. 2005); <u>see also</u> Fed. R. Civ. P. Supp. R. B advisory committee's note ("The . . . order will issue when the plaintiff makes a prima facie showing that he has a maritime claim against the defendant in the amount sued for and the defendant is not present in the district."). To obtain an order of attachment, "the plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on

2

information and belief, the defendant cannot be found within the district." Fed. R. Civ. P. Supp.
R. B(1)(b).

Pursuant to Supplemental Rule E(4)(f), "any person claiming an interest" in the attached
property may challenge the attachment at a hearing "at which the plaintiff shall be required to
show why the . . . attachment should not be vacated or other relief granted consistent with these
rules." Fed. R. Civ. P. Supp. R. E(4)(f). "It is clear from the text of [Rule E(4)(f)] that . . . the
party having obtained the maritime attachment bears the burden of showing that the attachment
should not be vacated." Ullises Shipping Corp., 415 F. Supp. 2d at 323; see also Fed. R. Civ. P.
Supp. R. E advisory committee's note ("The plaintiff has the burden of showing why the seizure
should not be vacated."). To satisfy this burden, the plaintiff must show by a preponderance of
the evidence "that the attachment order . . . meets all technical requirements [and] also is
reasonably calculated to serve at least one of the two historical purposes of obtaining jurisdiction
or securing a judgment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 384 F. Supp. 2d
726, 729 (S.D.N.Y. 2005).

The attachment order obtained by DS Bulk did not "meet[] all technical requirements."
Id. Universal is not named as a party defendant in the Complaint in this action.[1] The language
of Supplemental Rule B clearly anticipates that only a "defendant" will be subject to an order of
attachment. Specifically, Supplemental Rule B requires a plaintiff to make "a prima facie
showing that [it] has a maritime claim against the defendant in the amount sued for." Fed. R.
Civ. P. Supp. R. B. advisory committee's note. Because DS Bulk failed to name Universal as a
defendant, it could not make this prima facie showing. Moreover, neither the Complaint nor the

---

[1] Neither, Universal asserts, is it a party to the arbitration of this issue currently taking place in London. (See
Captain Panagiotis Mihalitsis Decl., dated Feb. 24, 2006 at ¶ 3.)

Affidavit avers that Universal cannot be "found within the district," a key prerequisite to obtaining an attachment pursuant to Rule B.

Not only is the attachment order technically deficient, it also fails "to serve at least one of the two historical purposes of obtaining jurisdiction or securing a judgment." Aqua Stoli Shipping, 384 F. Supp. 2d at 729; see also Seawind Compania, S.A. v. Crescent Line, Inc., 320 F.2d 580, 581-82 (2d Cir. 1963) (the two purposes of maritime attachments are "to obtain jurisdiction of the respondent in personam through his property [and] to assure satisfaction of any decree in libelant's favor"). Because Universal is not a defendant in this action, the purpose of the attachment is not to secure Universal's property in order to obtain in personam jurisdiction. Moreover, because the controversy, per the terms of the Complaint, is between DS Bulk and Calder, DS Bulk has no right to a judgment against Universal and the attachment does not "assure satisfaction of any decree in libellant's favor." Seawind Compania, S.A., 320 F.2d at 582.

DS Bulk maintains that the attachment is valid despite these defects because the $56,042.20 attached were not Universal's own funds, but rather belonged to Calder—the named defendant—and were merely passing through Universal's bank account at the time they were attached. Therefore, DS Bulk reasons, "it is not necessary to name UCL as a defendant any more than it is necessary to name the bank holding the EFT as a defendant." However, DS Bulk cites no authority for the proposition that property of a non-party to an action may be attached on the bare assertion that this property in fact belongs to a party to the action.

4

The December 5, 2005 Process of Maritime Attachment and Garnishment is therefore

vacated to the extent it seeks the attachment of property belonging to Universal.

Dated: New York, New York
      June 13, 2006

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.

# EXHIBIT 8

CLOSED, ECF

# U.S. District Court
## United States District Court for the Southern District of New York (Foley Square)
### CIVIL DOCKET FOR CASE #: 1:05-cv-10146-SHS

DS Bulk PTE.LTD. v. Calder Seacarrier Corporation
Assigned to: Judge Sidney H. Stein
Demand: $338,000
Cause: 28:1333 Admiralty

Date Filed: 12/02/2005
Date Terminated: 06/13/2006
Jury Demand: None
Nature of Suit: 120 Contract: Marine
Jurisdiction: Federal Question

**Plaintiff**

**DS Bulk PTE.LTD.**                    represented by    **Jack A. Greenbaum**
Blank Rome LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212)885-5000
Fax: (212)885-5001
Email: jgreenbaum@blankrome.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Calder Seacarrier Corporation**

**Interested Party**

**Universal Cargo Lines**                represented by    **Garth S. Wolfson**
Mahoney & Keane, LLP
11 Hanover Square
10th Floor
New York, NY 10005
212 385-1422
Fax: (212) 385-1605
Email: gwolfson@mahoneykeane.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 12/02/2005 | 1 | COMPLAINT against Calder Seacarrier Corporation. (Filing Fee $ 250.00, Receipt Number 563127)Document filed by DS Bulk PTE.LTD..(js, ) Additional attachment(s) added on 12/7/2005 (jmi, ). (Entered: 12/02/2005) |

| | | |
|---|---|---|
| 12/02/2005 | | SUMMONS ISSUED as to Calder Seacarrier Corporation. (js, ) (Entered: 12/02/2005) |
| 12/02/2005 | 2 | RULE 7.1 DISCLOSURE STATEMENT. Document filed by DS Bulk PTE.LTD..(js, ) Additional attachment(s) added on 12/7/2005 (jmi, ). (Entered: 12/02/2005) |
| 12/02/2005 | | Magistrate Judge Theodore H. Katz is so designated. (js, ) (Entered: 12/02/2005) |
| 12/02/2005 | | Case Designated ECF. (js, ) (Entered: 12/02/2005) |
| 12/05/2005 | 3 | ORDER directing the clerk to issue Maritime Attachment and Garnishment shall issue against all tangible or intangible property belonging to, claimed by or being held for the Defendant, whether in its own name or in the name of Universal Cargo Lines S.A. by any garnishees within this District, including but not limited to electronic fund transfers originated by, payable to, or otherwise for the benefit of Defendant whether to or from the garnishee banks or any other electronic fund transfers, in an amount of up to $337,709.26, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.Any person claiming an interest in the property attached or garnished pursuant to said order shall, upon application to the Court, be entitled to a prompt hearing at which the Plaintiffs shall be required to show cause why the attachment and garnishment should not be vacated or other relief granted.The supplemental process enforcing the Court's Order may be issued by the Clerk upon application without further Order of the Court.The following initial service by the United States Marshal or other designated process server upon each garnishee, that supplemental service of the Process of Maritime Attachment and Garnishment, as well as this Order, may be made by way of facsimile transmission to each garnishee.Pursuant to Federal Rule of Civil Procedure 5(b)(2)(D) each garnishee may consent, in writing, to accept service by any other means.A copy of this Order be attached and served with said Process of Maritime Attachment and Garnishment. (Signed by Judge Sidney H. Stein on 12/5/05) (sgu, ) (Entered: 12/06/2005) |
| 12/05/2005 | 4 | ORDER APPOINTING PROCESS SERVER Michael Watson or any other person at least 18 years of age and not a party to this action, appointed by Healy & Baillie, LLP, be and hereby is, appointed to serve the Order Directing Clerk to Issued Process of Maritime Attachment and Garnishment, the Process of Maritime Attachment and our Supplemental Process, and a copy of the Verified Complaint on garnishees as so permitted therein. (Signed by Judge Sidney H. Stein on 12/5/05) (sgu, ) (Entered: 12/06/2005) |
| 12/05/2005 | | MARITIME ATTACHMENT AND GARNISHMENT ISSUED as to Calder Seacarrier Corporation on 12/5/05 in the amount of $337,709.26. (sgu, ) (Entered: 12/06/2005) |
| 12/06/2005 | 5 | ORDER APPOINTING PROCESS SERVER: that Michael Watson is appointed by Healy & Baillie, L.L.P. is appointed to serve the Order Directing Clerk to Issue of Maritime Attachment and Garnishment as further set forth in said order. (Signed by Judge Sidney H. Stein on 12/5/05) (db, ) (Entered: 12/07/2005) |
| | | |

| | | |
|---|---|---|
| 12/12/2005 | | SUPPLEMENTAL MARITIME ATTACHMENT AND GARNISHMENT ISSUED as to Calder Seacarrier Corporation on 12/12/05 in the amount of $337,709.26. (sgu, ) Modified on 12/12/2005 (sgu, ). (Entered: 12/12/2005) |
| 02/28/2006 | 6 | ORDER: It is hereby ordered that the last day for third party Universal Cargo Lines S.A. to move to vacate the order of attachment is 3/1/2006; the last day for plaintiff to respond to such motion is 3/8/2006; and the last day for Universal Cargo to file a reply is 3/15/2006. (Signed by Judge Sidney H. Stein on 2/23/2006) (lb, ) (Entered: 03/01/2006) |
| 03/01/2006 | 7 | MOTION to Vacate *Attachment*. Document filed by Universal Cargo Lines. (Wolfson, Garth) (Entered: 03/01/2006) |
| 03/01/2006 | 8 | DECLARATION in Support re: 7 MOTION to Vacate *Attachment*.. Document filed by Universal Cargo Lines. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G# 8 Exhibit H# 9 Exhibit I# 10 Exhibit J# 11 Exhibit K# 12 Exhibit L# 13 Exhibit M# 14 Exhibit N# 15 Exhibit O)(Wolfson, Garth) (Entered: 03/01/2006) |
| 03/01/2006 | 9 | MEMORANDUM OF LAW in Support re: 7 MOTION to Vacate *Attachment*.. Document filed by Universal Cargo Lines. (Wolfson, Garth) (Entered: 03/01/2006) |
| 03/08/2006 | 10 | MEMORANDUM OF LAW in Opposition re: 7 MOTION to Vacate *Attachment*.. Document filed by DS Bulk PTE.LTD.. (Greenbaum, Jack) (Entered: 03/08/2006) |
| 03/10/2006 | 11 | REPLY MEMORANDUM OF LAW in Support re: 7 MOTION to Vacate *Attachment*.. Document filed by Universal Cargo Lines. (Wolfson, Garth) (Entered: 03/10/2006) |
| 06/13/2006 | 12 | MEMORANDUM ORDER; re: granting 7 MOTION to Vacate *Attachment*. filed by Universal Cargo Lines, to the extent it sees the attachment of property belonging to Universal. (Signed by Judge Sidney H. Stein on 6/13/06) (pl, ) (Entered: 06/13/2006) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/08/2008 16:07:46 | | | |
| **PACER Login:** | tl0085 | **Client Code:** | 1841 |
| **Description:** | Docket Report | **Search Criteria:** | 1:05-cv-10146-SHS |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

# EXHIBIT 9



JUL 19 2007
U.S.D.C. S.D. N.Y.
CASHIERS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JUDGE KAPLAN

CALDER SEACARRIER CORP.,

          Plaintiff,

    -against-

VIKING MARINE S.A.,

          Defendant.

'07 CIV 6520

COMPLAINT

    **PLEASE TAKE NOTICE** that Plaintiff, CALDER SEACARRIER CORP., ("CALDER"), by its attorneys, MAHONEY & KEANE, LLP, as and for a Complaint against Defendant, VIKING MARINE S.A. ("VIKING"), alleges, upon information and belief, as follows:

    1.    This is a case of admiralty and maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is based upon 28 U.S.C. § 1333, as well as the Court's diversity, pendent, supplementary and ancillary jurisdiction.

    2.    Plaintiff is a legal entity duly organized and existing pursuant to the laws of a foreign country.

    3.    Defendant VIKING is a business entity organized and existing pursuant to the laws of a foreign country with offices and a place of business located at c/o PRIAMOS MARITIME S.A., 72-74, Marathonos Str., 16673 Panorama Voulas, Athens, Greece.

    4.    On or about June 6, 2007, Plaintiff, as charterer, and Defendant VIKING, as owner, entered into a charter agreement for the use of the M/V VERA.

    5.    Plaintiff complied with each and every requirement imposed by the agreement between the parties.

- 1 -

6.    Defendant VIKING wrongfully, willfully, negligently and/or fraudulently breach the terms of the subject charter agreement by, *inter alia*, failing to provide the said vessel, as per the terms of the charter agreement.

7.    Defendant VIKING wrongfully, willfully, negligently, and/or fraudulently interfered with Plaintiff's right to enter into contracts relating to the use of the M/V VERA

8.    As a result of Defendant's breach of the subject charter agreement and tortuous interference with Plaintiff's right to contract, Plaintiff has incurred, and will continue to incur, costs and expenses for which Defendant is liable under the terms of the charter agreement and at law.

9.    Plaintiff has placed Defendant on notice of its claim that Defendant has breached the subject charter agreement and violated Plaintiff's rights under the law.

10.    Despite Plaintiff's repeated demands, Defendant has failed to pay the Plaintiff's damages due and owing under the charter agreement and at law.

11.    Pursuant to the charter agreement, disputes are to be settled by arbitration, and arbitration between Plaintiff and Defendant is underway, accordingly.

12.    Under the rules of such arbitration, interest, costs, and attorneys' fees are routinely awarded to the prevailing party.

13.    As a result of Defendant's breach of the charter agreement and violation of Plaintiff's rights under the law, Plaintiff has sustained damages, and, as best as can now be estimated, Plaintiff expects to recover the following amounts, exclusive of interest, by way of arbitral award:

| | |
|---|---|
| Principal Claim | $600,000.00 |
| Attorneys' and Expert's Fees, | $250,000.00 |
| Arbitration Expenses | $100,000.00 |
| **Total** | **$950,000.00** |

14.    Plaintiff notes that the above claim figures constitute estimates derived from the information currently available and reserves the right to amend or adjust same in the event that newly discovered facts demand such amendment.

15.    Plaintiff sues on its own behalf and as agent and trustee on behalf of any other party who may now have or hereinafter acquire an interest in this action.

16.    All conditions precedent required of Plaintiff in the aforesaid charter agreement have been performed.

17.    Defendant VIKING cannot be found, within the meaning of Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims, within this District, but, upon information and belief, Defendant has or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court held in the hands of garnishees including, but not limited to, Bank of America, Bank of New York, Citibank, HSBC Bank USA N.A., J.P. Morgan Chase, Standard Chartered Bank, Siam Commercial Bank, Wachovia Bank N.A., Deutsche Bank AG, ABN AMRO Bank N.V. and/or DBS Bank Ltd, which are believed to be due and owing to Plaintiff.

18.    For the purpose of obtaining personal jurisdiction over Defendant and securing Plaintiff's claim as described above, Plaintiff seeks and order from this Court directing the Clerk of the Court to issue process of maritime attachment and garnishment pursuant to Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims and the Federal Arbitration Act, 9 U.S.C. § 1 et seq., restraining and attaching any assets, cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit freights, sub-freights, charter hire, sub-charter hire, and/or other assets belonging to, due or for the benefit of Defendant, including but not limited to such assets as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking institutions including but not limited to the aforesaid garnishees and/or any other garnishee upon whom a copy of the Process of Maritime Attachment and Garnishment may be served.

- 3 -

WHEREFORE, Plaintiff prays:

A.    That process in due form of law issue against Defendant VIKING, citing it to appear and answer under oath all and singular the matters alleged in the Complaint;

B.    That, since Defendant cannot be found in this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, the Court directs the Clerk of the Court to issue an order, pursuant to Rule B of the Federal Rules of Civil Procedure Supplemental Rules for Certain Admiralty and Maritime Claims and the Federal Arbitration Act, 9 U.S.C. § 1 et seq., restraining and attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including but not limited to the Bank of America, Bank of New York, Citibank, HSBC Bank USA N.A., J.P. Morgan Chase, Standard Chartered Bank, Siam Commercial Bank, Wachovia Bank N.A., Deutsche Bank AG, ABN AMRO Bank N.V., DBS Bank Ltd., and/or any other garnishee upon whom a copy of the Process of Maritime Attachment and Garnishment may be served, in the amount of **$950,000.00** to secure Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and answer the matters alleged in the Complaint;

C.    That the Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof.

D.    That Plaintiff has such other and further relief as this Honorable Court may deem just and proper.

Dated: New York, NY

July 19, 2007

Respectfully submitted,

MAHONEY & KEANE, LLP.
Attorneys for Plaintiff
**CALDER SEACARRIER CORP.**

By: _____
Garth S. Wolfson (GW 7700)
111 Broadway, 10th Floor
New York, NY 10006
Tel. (212) 385-1422
Fax (212) 385-1605
Our File No. 12/3437

- 5 -